UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADVANTUS, CORP., et al.,

        Plaintiffs,

vs.                                    Case No. 3:13-cv-240-J-34MCR

T2 INTERNATIONAL, LLC,

        Defendant.
_____

ADVANTUS, CORP.,

        Plaintiff,

vs.                                    Case No. 3:14-cv-484-J-34PDB

T2 INTERNATIONAL, LLC, et al.,

        Defendants.
_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Defendants T2 International, LLC and T2 Products, LLC's Motion for Summary Judgment and Memorandum in Support (Doc. 53; Motion), filed on May 8, 2015.[1] In the Motion, Defendants T2 International, LLC and T2 Products, LLC (collectively, T2) request that the Court enter summary judgment in their favor on Counts I and III of the Complaint (Doc. 1). See Motion at 2. On June 1, 2015, Plaintiff Advantus, Corp. (Advantus) filed a response in opposition to the Motion. See Plaintiff

---

[1] Unless the Court indicates otherwise, document numbers refer to the docket in Advantus, Corp. v. T2 International, LLC, et al., (Advantus II), 3:14-cv-484-J-34PDB.

Advantus, Corp.'s Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 59; Response).  Accordingly, this matter is ripe for review.

## I.     Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[2]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004).

---

[2]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

**II.    Procedural History**

The dispute between these parties first came to this Court on March 6, 2013, when Advantus initiated Advantus, Corp. v. T2 International, LLC (Advantus I), 3:13-cv-240-J-34MCR by filing a Complaint for Damages and Injunctive Relief and Demand for Jury Trial (Doc. 1). The following month, Advantus filed an amended complaint and a motion for preliminary injunction premised on alleged trademark and patent infringement. See Amended Complaint for Damages and Injunctive Relief and Demand for Jury Trial (Advantus I, Doc. 9), filed April 12, 2013; Plaintiffs' Motion for Preliminary Injunction and

Incorporated Memorandum of Law (Advantus I, Doc. 10), filed April 17, 2013.  The Court granted Advantus' request for a preliminary injunction as to the patent infringement claim, and denied, without prejudice, the same request as to the trademark infringement claim. See Order (Advantus I, Doc. 35) at 26.  The parties later settled the matter and, at their request, the Court entered a Final Judgment of Permanent Injunction (Advantus I, Doc. 86; Permanent Injunction) on October 22, 2013.  The Court's Permanent Injunction directs that:

> Defendant T2 International, LLC and all of its agents, successors, assigns, and persons in active concert or participation with any of them, who received actual notice of this Order by personal service or otherwise, are **ENJOINED** from manufacturing, distributing, selling, offering for sale, and/or advertising the Luxury Lounger, Skye Float Disc, Pure Sky Float, and Pure Skye Float XL products, the 'Spuncrylic & Mesh' and 'Sunbrella & Mesh' versions of the Maggie Blue and Neo Papasan products, and any renamed or reconfigured versions of these floats as to size or shape.

See Permanent Injunction at 5-6.  This Injunction remains in full force and effect until September 21, 2029.  Id. at 6.

Six months after the entry of the Permanent Injunction, Advantus filed Plaintiffs' Motion for T2 International, LLC, T2 Products, LLC, and Todd Youngblood to be Held in Contempt for Violation of Permanent Injunction (Advantus I, Doc. 88; Motion for Contempt) alleging that T2 International, LLC, the Defendant in Advantus I, and T2 Products, its related entity, as well as Todd Youngblood, the president of both entities, violated the Court's Permanent Injunction.  In addition, on April 24, 2014, Advantus initiated a new action against T2 International and T2 Products, Advantus II, premised on substantially the same alleged conduct that forms the basis of the Motion for Contempt.  See generally Complaint.  In the Complaint, Advantus asserts claims for breach of contract, false advertising under the Lanham Act, 15 U.S.C. § 1125(a), misleading advertising under section 817.41 of the Florida

Statutes, violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.20, and unfair competition under Florida common law. See Complaint at 8-15. At the request of Advantus, and without opposition from T2, the Court consolidated the two cases. See Order (Doc. 14), entered June 12, 2014. On April 27, 2015, the Court granted the Motion for Contempt to the extent that the Court directed T2 International, LLC, T2 Products, LLC and Todd Youngblood to show cause at a hearing before the undersigned why they should not be held in civil contempt for failure to comply with the requirements of the Court's Permanent Injunction. See Order (Advantus I, Doc. 110) at 7-8. In doing so, the Court determined that the show cause hearing would take place contemporaneously with the trial on the merits in Advantus II. Id. T2 now moves for summary judgment on Counts I and III of the Complaint filed in Advantus II.

### III.     Factual Background

The current dispute between the parties centers on T2's sale of a "Maggie Blue" pool float to Costco. Pursuant to the Permanent Injunction, T2 is enjoined from offering for sale, selling, or advertising a "Sunbrella & Mesh" version of the Maggie Blue. See Permanent Injunction at 5-6. However, after the entry of the Permanent Injunction, Advantus entered into a sublicensing agreement with T2. See Declaration of Kevin Carpenter (Doc. 59-1; Carpenter Decl.), Ex. 1: Sublicense Agreement (the Agreement). In the Agreement, Advantus authorized T2 to "manufacture and sell" specific Buoyant Cushion Products,[3]

---

[3] "Buoyant Cushion Products" are defined in the Agreement as "any products now or hereafter sublicensed under this Agreement and any other products that are the embodiment of any of the claims of the Buoyant Cushion Patent." See Agreement at 1, 13-15. The Buoyant Cushion Patent is United States Patent 8,167,672 BS, and was the subject of Advantus I. The details surrounding this Patent and the parties' initial dispute over pool floats utilizing this Patent are set forth in the Permanent Injunction.

including the "Maggie Blue," under specific circumstances. See Agreement at 2-3, 13-15. T2 contracted, in relevant part, that it would not

> directly or indirectly:
>
> (i) Import, use, make, have made, sell or offer to sell any Sublicense Products in any way or manner whatsoever except in strict compliance with this Agreement.
> (ii) Import, use, make, have made, sell or offer to sell any Buoyant Cushion Products within the United States, except to the extent that the sale of such products is explicitly authorized under Schedules A, B, or C.

See Agreement at 6. T2 also agreed that it would not "directly or indirectly circumvent or attempt to circumvent the intent of this Agreement, whether though [sic] other entities or otherwise." Id. at 7. The Agreement required T2 to pay monthly royalties to Advantus constituting a percentage of the gross sales of these products. Id. at 5.

Pursuant to Schedule C of the Agreement, Advantus authorized T2 to sell a Sunbrella & Mesh Maggie Blue to Costco. See Agreement at 15; Carpenter Decl. ¶ 7. As such, in 2013, T2 sold 96 Sunbrella & Mesh Maggie Blue pool floats to Costco and paid Advantus a royalty for these sales. See Carpenter Decl. ¶ 8; Ex. 3. In 2014, T2 continued to sell to Costco a "Maggie Blue" pool float in packaging which specifically advertised an "easy-drain mesh bottom" and depicted a pool float with a Sunbrella top and a mesh bottom. See Motion, Ex. C; Carpenter Decl. ¶ 10; Declaration of Charles Frohman in Support of [Motion for Contempt] (Doc. 60-7 at 23; Frohman Decl.) ¶¶ 4-5. However, despite the representations on the packaging, the product actually contained therein was "an all fabric bottom Maggie Blue (the Hornwood)." See Carpenter Decl. ¶ 10; Frohman Decl. ¶¶ 5-6. Indeed, T2's President Todd Youngblood admits that, as opposed to the "spacer mesh bottom" used in the 2013 Maggie Blue product, the Maggie Blue product sold to Costco in

2014 had "a Hornwood mesh bottom." See May 29, 2015 30(b)(6) Video Deposition of Todd Youngblood (Doc. 62-1; 2015 Youngblood Dep.) at 12. However, Advantus presents evidence that the fabric bottom on the Hornwood Maggie Blue is neither a "mesh" nor easy draining. See Deposition of Dianne Burr (Doc. 60-5) ¶¶ 47-49; Declaration of Jon Paul Rust, Ph.D. (Doc. 59-2), Ex. 1 at 4. T2 sold approximately 8,000 of the Hornwood Maggie Blue products to Costco, see 2015 Youngblood Dep. at 26; Notice of Filing Financial Spreadsheet Under Seal Pursuant to June 4, 2015 Order [D.E. 61] (Doc. 63), but did not pay any royalty to Advantus for the sale of these products. See Carpenter Decl. ¶ 10. Notably, other than the "Sunbrella & Mesh" or "Suncrylic & Mesh" versions of the Maggie Blue that are governed by the Agreement, T2 has not commercially sold any other variety of the Maggie Blue pool float with a Sunbrella top and a mesh bottom. See December 4, 2014 Deposition of Todd R. Youngblood (Doc. 60-1; 2014 Youngblood Dep.) at 14.

**IV.    Discussion**

    **A.    Breach of Contract**

T2 contends that it is entitled to summary judgment on Advantus' breach of contract claim because the Hornwood version of the Maggie Blue does not utilize the Patent and is not a Buoyant Cushion Product within the meaning of the Agreement. See Motion at 7. As such, T2 asserts that "the only product T2 offered for sale was not a product covered by the patent, and therefore was not prohibited by the contract." See id. at 8. T2 further maintains that even if depicting a product on the packaging constitutes an "offer for sale," regardless of the product actually in the box, there is no evidence that the product shown on the 2014 Maggie Blue packaging is a pool float covered under the Agreement. Id. at 8-10. Upon due

consideration, the Court finds that T2 has failed to meet its burden to show the absence of a material issue of fact with respect to Advantus' breach of contract claim. Indeed, Advantus has presented sufficient evidence from which a reasonable juror could conclude that T2 has "used" or "offered for sale" the Sunbrella & Mesh Maggie Blue pool float in a manner that failed to strictly comply with the terms of the Agreement and/or circumvented the intent of the Agreement. While T2 disputes that the Maggie Blue product depicted on the packaging is the same Maggie Blue pool float subject to the Agreement, the Court finds that there is a question of fact on this issue. See 2014 Youngblood Dep. at 14, 170-71. As such, the Court determines that T2's arguments are unavailing, and therefore its request for summary judgment as to Count I of the Complaint is due to be denied.

### B. Misleading Advertising

With respect to Advantus' claim for misleading advertising pursuant to section 817.41 of the Florida Statutes, T2 argues that it is entitled to summary judgment because Advantus cannot present any evidence that it relied on an alleged misrepresentation to its detriment. See Motion at 10-12. Generally, to prevail on a claim for misleading advertising under Florida law, a plaintiff must establish the elements of common law fraudulent inducement, including that "the plaintiff suffered injury in justifiable reliance on the representation." See Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007). However, "when the party alleging misleading advertising is a competitor of the defendant in selling the goods or services to which the misleading advertisement relates, an allegation of competition is permitted to 'stand-in' for the element of direct reliance that a consumer is obligated to plead." Id. Because it is undisputed that "Advantus and T2 are

competitors in the market for pool floats, and they compete for a common pool of customers," see Complaint ¶ 52; First Amended Answer (Doc. 23) ¶ 52, T2's contention that Advantus must establish reliance is without merit. T2 makes no other challenge to Advantus' misleading advertising claim, and therefore, T2's request for summary judgment on Count III of the Complaint is due to be denied as well. In light of the foregoing, it is

**ORDERED**:

Defendant T2 International, LLC and T2 Products, LLC's Motion for Summary Judgment and Memorandum in Support (Doc. 53) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida on October 7, 2015.

*[Signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties